## Commonwealth ex rel. Houser v. Lerch.

*Parent and child — Custody of child — Grandparents—Rights of father— Habeas corpus—Control of the writ by the court.*

1. The common law rule that the father has a superior right to the custody of his minor child has been very materially modified. The rule in Pennsylvania is that the welfare of the child and its best interest are the controlling elements in the determination of all disputes as to its custody.

2. Upon *habeas corpus*, at the petition of a father seeking the custody of his minor daughter, where it appears that the mother of the child is dead and there are two homes available to the child, one with its paternal grandparents and the other with the maternal grandparents, in both of which places the child would be well cared for, with no marked advantage in either place, the court will award the custody of the child to the father in his parents' home. It is immaterial that the father is not much of a bread-winner and is of somewhat wandering disposition if the child will be properly cared for.

3. In such case the court will retain the writ, subject to its control if it be made to appear that the child is not properly cared for in the future.

*Habeas corpus.* Petition for the custody of a minor child. C. P. Dauphin Co., Jan. T., 1922, No. 55.

*Beidleman & Hull,* for petition; *John R. Geyer,* contra.

Fox, J., May 1, 1922.—This writ issued on petition of the father for the custody of his child, Beatrice J. Houser, aged four years, now in the custody of its maternal grandfather, the respondent, who resides in the Borough of Royalton. The relator resides with his father in the Borough of Middletown, which two boroughs are close to one another, the Swatara Creek being the dividing line.

2 D. & C.

Commonwealth ex rel. Houser *v.* Lerch.

The relator was married to Beatrice J. Lerch in 1915, and the child was born to them Jan. 25, 1918, in Bedford, Pennsylvania, where the parents were living; the relator then being in the recruiting service of the United States Army. In April or May of 1918 the relator was ordered to go, and went, into a hospital, and there underwent a surgical operation and was treated in a hospital or barracks until January, 1919, and on the 10th day of that month and year was honorably discharged from the army, whereupon he returned to his father's home. During this period from about April or May, 1918, the mother had the child living, during the greater part thereof, at her father's home, and the relator was at the home of his father. Upon his discharge from the army in 1919, the father and the mother, with the child, were at the home of the former's parents in Middletown, and after being there for a week or a week and one-half, the mother left the relator and the child and went to the home of her father at Royalton; the relator at his father's home kept the child for about a year, until January, 1920; personally attending to it and dutifully caring for it.

A disagreement arose between him and his wife and they parted; he went to New York and came back in April of that year, went over to his father-in-law's home for the child, where she had been, and had her brought to him. The wife again joined him and stayed with him for a week or two. He then secured employment with the Pennsylvania Steel Company, and he and his wife contemplated resuming housekeeping as soon as he could accumulate enough money so to do, but in July of the same year he abandoned his employment, went to New York, joined the crew of a ship, sailed on July 7th, was shipwrecked near the Azores, was rescued, and sailed for the United States on Oct. 2nd. On the return he was again shipwrecked, rescued, and arrived home about Nov. 1, 1920. During the period from July to November, 1920, the wife and child were at the home of the respondent. Upon his return the relator again procured the child; the wife came and remainded with him for several weeks, and then she departed, leaving the child with her father, who kept it until January, 1921, when, during his absence of several weeks, the mother, without the knowledge or consent of the father, took the child. The latter then again went to sea, leaving the child in the home of the respondent with her mother until his return in November, 1921. The relator was endeavoring to procure a license as a marine engineer, and was serving his apprenticeship at sea, expecting ultimately to be located on land. He returned from sea to New York on June 4, 1921, went to the Great Lakes, hoping there to "take ship," but was unsuccessful, and returned home in November, 1921. In the meantime the wife had proceeded in divorce in this court on the ground of cruel and barbarous treatment, and on Oct. 31, 1921, a decree was signed, divorcing the libellant from the respondent. The mother of the child died on Nov. 25, 1921, the child then being in the possession of the respondent.

The relator enlisted in the United States Army as a single man, when in fact he was married; but, nevertheless, the wife received an allotment from the Government from the latter part of the year of 1917 to about January, 1919.

In November, 1921, the respondent demanded of and instituted proceedings against the father of the child for the maintenance of the child, and a little later the father of the child proceeded to obtain the custody of the child.

The relator and respondent are not on friendly terms; there is, indeed, hostility between them, and the relator is not a welcome guest at the home of his father-in-law, and it may safely be said, it is well-nigh impossible for him to see his child there.

Commonwealth ex rel. Houser v. Lerch.

The relator has no employment and has no estate of his own. His father, however, comes into court and says the child can be properly cared for at his home, where the relator lives, and he expresses a desire that the son bring the child to his home and keep it there, where, although his wife is an invalid, proper care and attention can and will be given to the child by others, arrangements for which have been made.

The first, last and most important question for our determination is, what will best promote the welfare of the child?

The child has been and is very well cared for in the home of the respondent, and the grandfather is now willing to continue to do so, without cost to the relator, if he may retain the custody of the child. The maternal grandmother looks after the child, but she also has the care of a mother, aged about eighty-five years. Between the two homes matters are fairly evenly balanced; in the home of either one or the other of the grandfathers, we think, the wants of the child would be adequately supplied, and her future welfare properly cared for. Under these evenly balanced conditions, we cannot disregard the interest and right of the father in and to his minor child. While he may be of a wandering disposition and may not be much of a bread-winner, yet with the assistance offered by his father, who is quite able to give it, we feel, as we have just said, the wants of the child will be fully supplied and her welfare properly cared for. The relator has always shown great affection for her and manifested a paternal interest in the child, and unless the permanent welfare of the child is injured thereby, we think he ought to have the custody of her.

The general rule in Pennsylvania, which has been established by a long line of decisions, is that the welfare and best interest of the child are the controlling elements in the determination of all disputes as to the custody of the child. The common law recognized a superior right of the father to the custody of his minor child, but this has been very materially modified. It is unnecessary to refer to the many decisions of our own courts. One of the most interesting historical sketches of the law on this subject is found in the opinion by Judge Allison in the case of Hart v. Hart, 14 Phila. 352.

The paternal right to the custody of a minor can be denied only when it appears from competent evidence that such custody would be detrimental to the permanent welfare of the child. See Foltz v. Zimmerman, 7 Lanc. Law Rev. 391; Com. ex rel. Rehak v. Koelsch, 67 Pitts. L. J. 157.

After carefully considering all of the evidence in the case and the law, we see no persuasive reason why the father should be denied the custody and companionship of his daughter. It will be incumbent upon him to provide for her necessities and comforts and to look after her future welfare and happiness, and if it should be shown to us in the future that the child is not receiving these requirements, the order now made may be modified.

In consideration of the care and attention given by the respondent to the child, we do not think he should pay the costs.

*Order.*

And now, May 1, 1922, on consideration of the testimony taken in the above entitled matter and the argument of counsel, it is ordered and decreed that Beatrice J. Houser, the said minor child, be remanded into the custody of Etter N. Houser, her father, there to remain until the further order of the court; that Charles Lerch and Anna Lerch, the maternal grandparents, and the members of their family, be permitted to visit the said Beatrice J. Houser at all reasonable times, and that upon such visits they shall receive and give

2 D. & C.

Commonwealth ex rel. Houser v. Lerch.

due and proper consideration and respect, and the child shall not be influenced against the grandparents or parent by either one party or the other.

It is further ordered and decreed that the said Beatrice J. Houser be permitted to visit her grandparents when convenient to herself and them, and that Charles Lerch and Anna Lerch, her said grandparents, and members of their family, be and are hereby permitted to take the said Beatrice J. Houser to the home of these grandparents for at least one week during each month of the year until she commences attending school, when permission to take her to their home shall be for at least one month during the common school vacation of each year thereafter and during the natural life of the grandparents or the survivor of them.

It is further ordered that this writ of *habeas corpus* shall stand over as a pending writ, subject always to such further order as may hereafter be adjudged by the court to be right and proper in relation to the custody of the said minor.

The costs in this case are to be paid by the relator.

From William Jenkins Wilcox, Harrisburg, Pa.